UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERTS AT ) | |
| LLOYD'S LONDON, SUBSCRIBING TO ) | |
| CERTIFICATE NO. LCL 004029, ) | |
| ) | |
| Plaintiffs/Intervenor Defendants, ) | |
| ) | |
| vs. ) | Case No. 4:14CV00936 AGF |
| ) | |
| PLAZA BANQUEUT CENTERS, INC., ) | |
| d/b/a LIGHTS ON BROADWAY; ERIC ) | |
| GALLOWAY; P&B REAL ESTATE, LLC; ) | |
| and LATROYA ADAMS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| HARTFORD FIRE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Intervenor Plaintiff. ) | |

## MEMORANDUM AND ORDER

This action seeks declaratory judgment with respect to the rights and obligations of the parties pursuant to a commercial general liability ("CGL") policy issued by Plaintiffs Certain Underwriters to Lloyd's London, Subscribing to Certificate No. LCL 004029 ("Underwriters") to Defendant Plaza Banquet Centers, Inc., d/b/a Lights on Broadway ("Plaza"), with Defendant P&B Real Estate, LLC ("P&B") as another named insured. The case arises out of the shooting death on December 25, 2010, of 16-year old Orlando Willis while he was an invitee at a night club owned/operated by Plaza and P&B. The matter is now before the Court on Defendants' motion to dismiss or stay this action in light of a garnishment action pending in Missouri state court involving substantially the same

parties and issues as this action. For the reasons set forth below, Defendants' motion shall be granted to the extent that the Court, in the exercise of its discretion, will abstain from and stay this case.

## BACKGROUND

On June 4, 2013 Defendant Latroyna Adams, Willis' mother, brought a wrongful death action in state court for negligence for the wrongful death of her son. On December 16, 2013, Adams filed a third amended petition that named Plaza, Galloway (an executive officer of Plaza), and P&B as defendants. On March 26, 2014, Underwriters received notice of the action from Adams' attorney. Plaza, Galloway, and P&B demanded that Underwriters defend and indemnify them pursuant to the CGL policy issued by Underwriters. The policy had a limit of $1,000,000 per occurrence.

On May 9, 2014, Underwriters confirmed their refusal to defend and indemnify their insureds, on the basis of the Assault and Battery Exclusion in the policy and on the basis that some of the damages sought by Adams were for emotional injuries and not "bodily injuries" covered by the policy. On May 12, 2014, Adams, Plaza, and Galloway entered into a settlement agreement pursuant to Mo. Rev. Stat. §537.065.[1] In the

---

1  This section provides in relevant part as follows:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the

2

agreement, Adams relinquished all rights to levy judgment against Plaza and Galloway and agreed to pursue collection from Underwriters only.

The present action was filed by Underwriters on May 16, 2014. Underwriters seek to confirm that they did not have a duty to defend or indemnify Plaza, Galloway, or P&B in the wrongful death action. In June 2014, Adams settled the wrongful death action with P&B for $1,000,000, which was paid by P&B's insurer Hartford Fire Insurance Co. ("Hartford"), and P&B was dismissed from the wrongful death action. On July 10, 2014, a hearing was held on liability and damages against Plaza and Galloway, and on July 22, 2014, the state trial court entered judgment for $5,000,000 against them. On July 24, 2014, Adams' counsel informed Underwriters of the judgment and Adams' intent to file a garnishment action if Underwriters continued to deny indemnity.

On August 26, 2014, Adams filed an equitable garnishment action against Underwriters, Plaza, and Galloway, pursuant to Mo. Rev. Stat. §379.200, seeking to recover the $5,000,000 judgment entered in the wrongful death lawsuit. By order dated December 15, 2014, the state court granted P&B and Hartford leave to intervene, resulting in the filing of an intervenors petition against Underwriters in which P&B claimed breach of contract and Hartford sought equitable subrogation. (Doc. No. 71-2.)

---

legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract.

Also on December 15, 2014, the state court denied Underwriters' motion to stay the garnishment action pending resolution of the present declaratory judgment action. The state court noted that all necessary and indispensable parties were now included in the garnishment action and that "as a matter of practicality, it may be more appropriate to stay the federal declaratory judgment action." (Doc. No. 75-1.)

In opposition to Defendants' motion to dismiss or stay this declaratory judgment action, Underwriters argue that the two actions are not parallel proceedings because the garnishment action may not be broad enough to resolve certain issues, such as whether "Hartford's subjugated claim is barred because P&B breached various conditions in the Policy." Underwriters also assert that the garnishment action can only address the CGL policy limit of $1,000,000, whereas the declaratory judgment action can address the parties' obligations as to the entire $5,000,000 judgment in the wrongful death action, and the $1,000,000 settlement with P&B. According to Underwriters, granting Defendants' motion to dismiss or stay would delay a comprehensive resolution of all coverage issues, and will improperly deny Underwriters their choice of forum.

## **DISCUSSION**

Typically, "a federal district court must exercise its jurisdiction over a claim" absent "exceptional circumstances." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013) (citation omitted). However, as Defendants recognize, when a lawsuit is filed pursuant to the Declaratory Judgment Act, a federal court's obligation to exercise jurisdiction yields "to practical considerations and substantial discretion." *Id*. When "a parallel" state court action is pending, the court's discretion is to be guided by

4

considerations of judicial economy, "'practicality and wise judicial administration,'" and avoiding "'gratuitous interference' with state proceedings." *Id*. (quoting *Brillhart v. Excess Ins. Co. of Am*., 316 U.S. 491, 495 (1942) & *Wilton v. Seven Falls Co*., 515 U.S. 277, 288 (1995)); *see also Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (8th Cir. 2000).

In the absence of parallel proceedings, a federal court still has discretion to abstain or stay, "but that discretion is less broad and is to be exercised according to a six factor test that [the Eighth Circuit] has adopted" in *Scottsdale Insurance Co. v. Detco Industries, Inc*., 426 F.3d 994 (8th Cir. 2005). *Lexington Ins. Co.*, 721 F.3d at 968. The six factors are:

> (1) whether the declaratory judgment sought "will serve a useful purpose in clarifying and settling the legal relations in issue;" (2) whether the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the [federal] proceeding;" (3) "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts;" (4) "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;" (5) "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law;'" and (6) "whether the declaratory judgment action is being used merely as a device for procedural fencing – that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable."

*Id*. (citations omitted).

A federal declaratory judgment action and state court proceeding are parallel "if they involve the same parties . . . and if the state action is likely to fully and satisfactorily resolve the dispute or uncertainty at the heart of the federal declaratory judgment action." *Id*. (citation omitted). Here the Court concludes that the two actions in question are

5

parallel. In the state garnishment action, Adams bears the burden of proving (1) that she obtained a judgment against Underwriters, (2) that Underwriters' policy covered the damages awarded in the judgment, and (3) that the policy was in effect at the time the shooting occurred. *See Peterson v. Discover Property & Cas. Ins. Co.*, ___S.W.3d___, 2015 WL 161013, at *3 n.5 (Mo. Ct. App. 2015). As the state court noted, all the parties, including P&B and Hartford, are now included in the garnishment action. Moreover, the two actions involve similar claims. *See Federated Mut. Ins. Co. v. Shernaman Enters., Inc.*, No. 4:14-CV-265 CAS, 2014 WL 6775832, at *5 (E.D. Mo. Dec. 2, 2014) (holding that a federal declaratory judgment action by an insurance company seeking a declaration that it had no duty to defend or indemnify its insured in connection with a state court products liability action was parallel to a Missouri equitable garnishment action by the insured against the insurance company to collect the judgment obtained following a § 537.065 settlement of the products liability action, as the declaratory judgment action and garnishment action involved the same parties and "similar claims concerning the parties' rights and responsibilities under the . . . policies").

The date the state court suit was filed is not determinative of the issue. In *Capitol Indemnity*, 218 F.3d at 873-75, the Eighth Circuit held that the district court abused its discretion in denying a motion to dismiss or stay a federal declaratory judgment action in favor of a parallel state court proceeding, even though the declaratory judgment action was filed several months prior to the state suit.

Having considered the relevant factors, the Court concludes that the parties' disputes can be better settled by the state court in light of the "scope and nature of the

pending state court proceeding," *see Capitol Indemnity*, 218 F.3d at 874, and therefore abstention is warranted. *See Federated Mut. Ins. Co.*, 2014 WL 6775832, at *5-6 (staying declaratory judgment action in light of pending equitable garnishment action, even though judgment in underlying lawsuit was in excess of policy limit); *Atl. Cas. Inc. Co. v. Kalindi*, No. 4:13CV1252 HEA, 2014 WL 1809578, at *5 (E.D. Mo. May 7, 2014) (same). The Court notes that it would exercise its discretion in the same way, even if the two actions involved here are not actually "parallel." Allowing both actions to proceed runs the risk of inconsistent rulings and would be uneconomical and vexatious for the parties and a waste of judicial resources. Further, the interpretation and application of Underwriters' CGL policy is purely a matter of state law and there are no federal defenses or claims.

The Court further concludes that this case should be stayed rather than dismissed. "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss or stay this action is **GRANTED** to the extent that the action shall be stayed. (Doc. No. 64.) Defendants shall promptly advise the Court upon the conclusion of the equitable garnishment action.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this case for administrative purposes, subject to further order of the Court. Any motion to reopen shall

7

include a statement of all relevant proceedings that have occurred in the equitable garnishment action in state court.

**IT IS FUTHER ORDERED** that all other pending motions are **DENIED without prejudice**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2015.